* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, AFFIRMS with some modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing, and in a Pre-Trial Agreement which was admitted into the record, and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder and nonjoinder of parties.
3. On all relevant dates, the parties were subject to the Workers' Compensation Act and an employer-employee relationship existed between defendant-employer and plaintiff-employee.
4. On all relevant dates, the above-designated carrier was on the risk at the time of the injury.
5. On or about 21 September 2001, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment.
6. On all relevant dates, plaintiff's average weekly wage was $340.00, yielding a compensation rate of $226.68. Plaintiff was paid total disability benefits from 21 September 2001, through 26 December 2001, and again from 2 January 2002 through the present.
7. At the hearing, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2) and a Packet of Discovery Responses, which was admitted into the record, and marked as Stipulated Exhibit (3).
 * * * * * * * * * * *
Based upon the foregoing Stipulations and the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff's native language is Portuguese and she testified at hearing through an interpreter, Ms. Dorace Trottier, who was duly sworn in that capacity.
2. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one years of age, with her date of birth being 18 November 1952. At the time of the accident, which is the subject of this claim, plaintiff was performing heavy labor, loading and unloading trucks at a K-Mart Distribution Center warehouse where she had been assigned to work by defendant-employer.
3. On 21 September 2001, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. Defendants admitted the compensability of plaintiff's claim through the filing of an Industrial Commission Form 60. The injury occurred when a wagon that was being pulled by a forklift struck plaintiff on her right foot, causing her to fall onto a cement floor. The wagon then ran over her leg.
4. Plaintiff initially sought medical treatment at an Urgent Care facility at Wesley Long Community Hospital in Greensboro where x-rays were taken of her cervical spine, thoracic spine, and the right tibia and fibula. The results of these x-rays were negative for any fractures. Plaintiff was diagnosed as having sustained a contusion injury to her right foot and leg. The medical provider removed plaintiff from work pending examination by an orthopedic specialist. The records from her initial examinations indicate that plaintiff reported right leg and ankle symptoms.
5. Dr. James Aplington, an orthopedic surgeon, examined plaintiff on 11 October 2001. In his medical notes, Dr. Aplington recorded a history of plaintiff having been injured when a dolly struck her right leg. He further noted that plaintiff reported symptoms of swelling up into the thigh and down the right leg and ankle. Based upon his physical examination and the normal x-rays of plaintiff, Dr. Aplington diagnosed a contusion of the right leg. He also noted that plaintiff was expressing an over-dramatization of her symptoms. Plaintiff was holding her ankle in a fixed position and would not allow Dr. Aplington or her husband to move it from this position. Dr. Aplington continued to medically excuse plaintiff from work until a return examination and also recommended physical therapy.
6. Plaintiff began physical therapy with Andrew Michels on 16 October 2001. At that time, plaintiff reported right leg and ankle pain. Mr. Michels began a set of exercises for plaintiff to perform in order to increase her range of motion. According to the physical therapy notes, plaintiff made good progress, and had seventy-five percent (75%) improved function following her therapy. At his deposition, Mr. Michels testified that plaintiff never complained of back pain during the course of her physical therapy.
7. On 2 November 2001, plaintiff returned to Dr. Aplington and reported cramping in her right calf, with shooting pain up her leg to her hip and back. She was still walking with her ankle bent downward. Based upon these symptoms, Dr. Aplington performed a straight leg-raising test, which was negative. Since the test was negative, Dr. Aplington did not examine, or perform diagnostic tests on plaintiff's back because he did not believe she had any true back origin to her symptoms. Dr. Aplington was of the opinion that plaintiff's symptoms were coming from the way she was walking. She had a "flexed ankle gait" which put more pressure on her hip and buttock. He could not determine whether plaintiff's abnormal positioning of her foot and ankle was voluntary or involuntary. He suspended physical therapy, placed plaintiff in a walking cast and kept her out of work until her next appointment.
8. Dr. Aplington next examined plaintiff on 16 November 2001, at which time he noted that she was flamboyant in the presentation of her symptoms and that she could walk normally during the examination. He kept her out of work for another week. On 23 November 2001, Dr. Aplington indicated that plaintiff could return to work on 26 November 2001, but he did not believe she should return to her previous heavy-duty position with defendant-employer due to her age and the "deconditioned" state of her body. On 4 January 2002 Dr. Aplington noted that plaintiff's presentation was inconsistent in the manner in which she held her foot while walking barefoot as compared to walking with shoes. Dr. Aplington was of the opinion that plaintiff had undergone an unusually long course of treatment for a relatively minor injury, and recommended a functional capacity evaluation.
9. On 30 January 2002, plaintiff underwent a functional capacity evaluation by William T. Griffin and Victoria Kellan. Mr. Griffin is the coordinator of industrial services for Greensboro Orthopaedic Sports Rehab Center and has a Master of Arts Degree in Exercise Physiology. The results of the functional capacity testing indicated that plaintiff was giving submaximal effort and exhibiting self-limiting behavior. Based upon the invalid functional capacity evaluation, Mr. Griffin could only speculate that plaintiff could do sedentary work because she was able to stand and walk frequently.
10. On 2 February 2002, Dr. Aplington reviewed the results of the functional capacity evaluation with plaintiff and her husband with the assistance of an interpreter. Based upon Plaintiff's failure to provide a consistent effort, Dr. Aplington opined that the functional capacity evaluation was invalid. Dr. Aplington also noted that plaintiff held her ankle abnormally during the examination he performed, but she held her ankle normally while he was talking to her regarding the evaluation results. Plaintiff would not complete enough tasks for Mr. Griffin to be able to evaluate her physical capabilities.
11. Dr. Aplington discharged plaintiff from his care on 2 February 2002. He noted that he did not believe plaintiff should return to the heavy work she previously performed regardless of the functional capacity evaluation, that he did not see anything that could be treated surgically and that he did not believe plaintiff had any permanent impairment. Dr. Aplington suggested that plaintiff see Dr. Robert Tisdale, a foot and ankle specialist at Baptist Hospital for a second opinion. Defendants denied this second opinion referral. Dr. Aplington opined that plaintiff's complaints of pain in her back were not related to her injury by accident on 21 September 2001.
12. On 8 May 2003, plaintiff was examined by Dr. T. Craig Derian, a board certified orthopedic surgeon. Based upon his examination, Dr. Derian was of the opinion that plaintiff had a possible L5-S1 lumbar disc herniation with right L5 radiculopathy and that her problems were manifested by leg symptoms, but were likely caused by disk rupture. In contrast to Dr. Aplington's negative straight leg-raising test that was performed nearer in time to the date of plaintiff's injury by accident, Dr. Derian testified that plaintiff had a positive straight leg-raising test when he examined her. Dr. Derian also testified that he found plaintiff's presentation to be consistent with her symptoms and that she was not demonstrating any secondary gain behavior. He characterized plaintiff as "a very animated, talkative, gesturing Brazilian female" and suggested that plaintiff may be more difficult to assess because she is from a different culture. Dr. Derian did not have an opportunity to review the MRI of plaintiff's spine or the MRI findings until after his deposition testimony. Therefore, some of his testimony concerning what his physical examination indicated was speculative, unless corroborated by MRI or other diagnostic testing.
13. On 14 October 2003, plaintiff was examined by Dr. Robert Elkins, who is a board certified orthopedic surgeon and independent medical examiner. Following his examination, Dr. Elkins noted that plaintiff's gait was normal, that she had fair toe walking, and poor heel walking. Dr. Elkins testified that typically, people with ankle problems also have difficulty with heel walking. Dr. Elkins further indicated that plaintiff expressed back tenderness that was out of proportion to the amount of stimuli he applied. He opined that Plaintiff was exhibiting symptom magnification and motivated by secondary gain issues. Based upon his overall examination, Dr. Elkins opined that plaintiff had no objective findings that would indicate an injury to her back. At his deposition, Dr. Elkins testified that at the time of his examination of plaintiff, she had no objective signs of radiculopathy or disc herniation that would cause the type of symptoms for which she complained.
14. Dr. Elkins ordered an MRI scan of plaintiff's right ankle, the results of which were normal. Regarding her ankle, Dr. Elkins opined that plaintiff did not have any work restrictions.
15. On 20 September 2004, an MRI of plaintiff's lumbar spine was performed. The results indicated degenerative disc disease with mild disc bulges at multiple levels, greater at L3-4 and L4-5; no evidence of nerve root impingement at the L5-S1 level and hypertrophic changes of facet joints without significant spinal stenosis.
16. On 18 October 2004, Dr. Derian noted, after reviewing the 20 September 2004 MRI, that plaintiff had sustained an annular tear at the L5-S1 level for which he recommended surgery. Prior to Dr. Derian's 18 October 2004 report, plaintiff had not been treated for any condition since 14 October 2003 when seen by Dr. Elkins.
17. Dr. Derian testified that someone with a herniated disc at L5-S1 or an L5 radiculopathy would be able to lift three-pound bags with either hand. Plaintiff indicated she could not perform this task during her functional capacity evaluation on 30 January 2002.
18. After reviewing all of the competent evidence of record, the Full Commission gives greater weight to the opinions of Dr. Aplington and Dr. Elkins over those of Dr. Derian. Dr. Aplington was plaintiff's primary treating physician and his observations were made closer in time to the date of her injury by accident. Additionally, in Dr. Derian's 18 October 2004 report, after having the benefit of the MRI, he indicated that plaintiff has symptomatic lumbar degenerative disc disease with lateral recess stenosis, rather than the disc herniation he previously suspected.
19. Plaintiff reached maximum medical improvement from her compensable right lower extremity injury by 25 November 2003 and was capable at that time of returning to full duty work, without restrictions.
20. Plaintiff's current back condition as diagnosed by Dr. Derian is not causally related to her 21 September 2001 injury by accident.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW §
1. On 21 September 2001, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. Plaintiff's disability resulting from her compensable injury ended by 25 November 2003. N.C. Gen. Stat. §§ 97-2(6); 97-2(9).
2. Because plaintiff's current back condition as diagnosed by Dr. Derian is not causally related to her 21 September 2001 injury by accident, she is not entitled to indemnity or medical compensation for her back. N.C. Gen. Stat. §§ 97-2(6); 97-25.
3. Since plaintiff's 14 November 2003 MRI of her right foot showed that there was some fluid present in the talotibial joint which could indicate chronic swelling and Dr. Elkins noted some slight bluish discoloration of her ankle, plaintiff may require future medical treatment for her right foot and ankle. Plaintiff is entitled to such medical treatment for her right foot and ankle as is reasonably required to effect a cure, provide relief or lessen her period of disability. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for additional workers compensation indemnity benefits must be and is hereby DENIED.
2. Defendants shall pay for all of plaintiff's reasonably necessary future medical treatment for her right foot and ankle arising from her compensable injury when bills have been submitted and approved according to procedures established by the Commission.
3. Defendants shall pay the costs.
IT IS ORDERED that Stipulated Exhibit pp. 59-61, consisting of Dr. Derian's medical report dated 18 October 2004 and an MRI report dated 20 September 2004, are added to the Transcript.
This the __ day of February 2006.
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ LAURA K. MAVRETIC COMMISSIONER
 S/_________________ DIANNE C. SELLERS COMMISSIONER